HARRY C. MARTIN AND EUGENE H. PHILLIPS v. THE STATE OF NORTH CAROLINA

No. 422PA91

(Filed 6 December 1991)

1. **Judges § 8 (NCI3d) — appellate justices and judges — retirement at age seventy-two — constitutionality of statute**

The statute requiring appellate division justices and judges to retire at age seventy-two, N.C.G.S. § 7A-4.20, does not unconstitutionally nullify the right of a justice or judge to the eight-year term provided by Art. IV, § 16 of the N. C. Constitution, since (1) the 1972 amendment to Art. IV, § 8 of the N. C. Constitution, providing that the General Assembly shall prescribe maximum age limits "for service" as a justice or judge, evinces an intent to empower the legislature to render particular justices or judges ineligible for active service because of age notwithstanding that time may remain in their terms of office; and (2) N.C.G.S. § 7A-4.20 was enacted by the General Assembly to become effective only if the 1972 amendment to Art. IV, § 8 was approved by the people, and the ratification of this amendment by the people with such knowledge indicates the intent of the people to empower the legislature to enact this statute notwithstanding the limitations which otherwise would have been imposed on the legislature by the eight-year term provision in Art. IV, § 16.

**Am Jur 2d, Judges § 17; Public Officers and Employees §§ 181, 182.**

**Mandatory retirement of public officer or employee based on age. 81 ALR3d 811.**

2. **Judges § 8 (NCI3d) — appellate justices and judges — retirement at age seventy-two — constitutionality of statute**

The statute requiring appellate justices and judges to retire at age seventy-two, N.C.G.S. § 7A-4.20, does not violate the "equal right to vote" or a fundamental right to candidacy under the equal protection clause of Art. I, § 19 of the N. C. Constitution since the statute was not only authorized but mandated by the people when they ratified the 1972 amendment to Art. IV, § 8 of the N. C. Constitution, and the statute thus did not violate other more general, substantive provisions

## MARTIN v. STATE OF NORTH CAROLINA

[330 N.C. 412 (1991)]

of the very constitution which, in Art. IV, § 8, expressly and specifically mandated its enactment.

**Am Jur 2d, Judges § 17; Public Officers and Employees §§ 181, 182.**

**Mandatory retirement of public officer or employee based on age. 81 ALR3d 811.**

ON discretionary review prior to a determination by the Court of Appeals, pursuant to Rule 15(a) of the North Carolina Rules of Appellate Procedure and N.C.G.S. § 7A-31(b), of a declaratory judgment and dismissal of plaintiffs' complaint by *Jenkins, J.,* in Superior Court, WAKE County, on 20 August 1991. Plaintiff Phillips appealed. Heard in the Supreme Court on 14 November 1991.

*Blanchard, Twiggs, Abrams & Strickland, P.A., by Charles F. Blanchard; and J. Wilson Parker, for plaintiff-appellant Judge Phillips.*

*Lacy H. Thornburg, Attorney General, by Andrew A. Vanore, Jr., Chief Deputy Attorney General, and Norma S. Harrell, Special Deputy Attorney General, for the State.*

EXUM, Chief Justice.

Plaintiff Martin,[1] an associate justice of the North Carolina Supreme Court, and plaintiff Phillips, a judge of the North Carolina Court of Appeals at the time suit was filed, brought this action seeking a declaration of their rights under Article IV, Section 16 of the North Carolina Constitution and N.C.G.S. § 7A-4.20. Article IV, Section 16 provides for an eight-year term of office for justices and judges of the appellate and superior court divisions of the General Court of Justice. N.C.G.S. § 7A-4.20 requires appellate judges to retire at age seventy-two. Alleging they would reach this age before the end of their respective eight-year terms, plaintiffs contended the statute, insofar as it required them to retire before the end of their terms, unconstitutionally infringed upon their right under Article IV, Section 16 to serve full, eight-year terms. They sought a declaration that, despite the statute, they

---

1. Plaintiff Martin participated in the trial court proceedings. He did not join in the appeal or the petition for review prior to determination by the Court of Appeals. He is not a party to the proceedings before us.

were entitled to serve out their terms. They also contended the statute violated other provisions of the North Carolina Constitution.

Article IV, Section 8 of our Constitution, as amended in 1972, requires the General Assembly to prescribe mandatory age limits for service in our state's judiciary. The trial court, declaring that N.C.G.S. § 7A-4.20 was a constitutional exercise of legislative authority pursuant to Article IV, Section 8, dismissed plaintiffs' complaint. Judge Phillips appealed and petitioned this Court for discretionary review prior to a determination of the Court of Appeals. We allowed the petition.

The question presented is whether N.C.G.S. § 7A-4.20, insofar as it requires justices and judges in the appellate division to retire from office at age seventy-two and before they have completed the terms for which they have been elected, violates the North Carolina Constitution. We conclude that it does not and affirm the trial court's judgment.

I.

The facts are stipulated:

Associate Justice Martin was last elected in November 1986. His term of office began on 1 January 1987. He was born on 13 January 1920 and will be seventy-two years old on 13 January 1992. Judge Phillips was last elected in November 1990. His term of office began on 1 January 1991. Judge Phillips was born on 5 September 1919 and reached seventy-two years of age on 5 September 1991. Under N.C.G.S. § 7A-4.20 Justice Martin must retire by 31 January 1992. Judge Phillips, having already reached age seventy-two, left the bench on 30 September 1991.

General Statute § 7A-4.20 states in pertinent part that:

No justice or judge of the appellate division of the General Court of Justice may continue in office beyond the last day of the month in which he attains his seventy-second birthday
. . . .

This statute was enacted by the General Assembly in 1971 to become effective only if an amendment to Article IV, Section 8 of the Constitution proposed by the General Assembly was approved by the people. 1971 N.C. Sess. Laws ch. 508, § 5. Before the proposed amendment, Article IV, Section 8, entitled "Retirement of Justices and Judges," provided in part that "[t]he General

**MARTIN v. STATE OF NORTH CAROLINA**

[330 N.C. 412 (1991)]

Assembly shall provide by general law for the retirement of Justices and Judges of the General Court of Justice . . . ." At the general election of 7 November 1972 the people ratified the proposed amendment. The amendment added a second sentence to Section 8. The sentence was: "The General Assembly shall also prescribe maximum age limits for service as a Justice or Judge." With the people's ratification of this amendment N.C.G.S. § 7A-4.20, as enacted, became law on 3 January 1973.

In substance, Article IV, Section 16 has been a part of the state Constitution since 1868. In its present form it is entitled "Terms of office and election of Justices of the Supreme Court, Judges of the Court of Appeals, and Judges of the Superior Court." Section 16 states:

> Justices of the Supreme Court, Judges of the Court of Appeals, and regular Judges of the Superior Court shall be elected by the qualified voters and *shall hold office for terms of eight years* and until their successors are elected and qualified.

(Emphasis added.)

## II.

[1] Judge Phillips first argues that N.C.G.S. § 7A-4.20 may not shorten his eight-year term because such abrogation would nullify the explicit right to such a term granted to justices and judges under Article IV, Section 16. The validity of this argument depends, of course, on the meaning of Article IV, Section 8, which, as amended in 1972, requires the General Assembly to impose an age limit beyond which justices and judges cannot actively serve. If Section 8 authorizes the General Assembly to impose the age limit even in the middle of a term, the argument must fail. If, on the other hand, Section 8 authorizes the General Assembly to impose the age limit subject to completion of a term, the argument succeeds. The question is, therefore, what does Section 8 mean? This question is resolved by inquiry into what the people intended when they adopted the amendment to Section 8 in 1972.

> This Court has stated:

> The will of the people as expressed in the Constitution is the supreme law of the land. In searching for this will or intent all cognate provisions are to be brought into view in their entirety and so interpreted as to effectuate the manifest

purposes of the instrument. The best way to ascertain the meaning of a word or sentence in the Constitution is to read it contextually and to compare it with other words and sentences with which it stands connected.

*State v. Emery*, 224 N.C. 581, 583, 31 S.E.2d 858, 860 (1944) (citations omitted). In order to determine the will of the people in ratifying the amendment to Section 8, and therefore to assess the constitutionality of N.C.G.S. § 7A-4.20, we "are in the main governed by the same general principles which control in ascertaining the meaning of all written instruments." *Perry v. Stancil*, 237 N.C. 442, 444, 75 S.E.2d 512, 514 (1953); *State ex rel. Martin v. Preston*, 325 N.C. 438, 449, 385 S.E.2d 473, 478 (1989).

First, we must give meaning to the plain language of the amendment. "In interpreting our Constitution—as in interpreting a statute—where the meaning is clear from the words used we will not search for a meaning elsewhere." *State ex rel. Martin* at 449, 385 S.E.2d at 478. As we will demonstrate, we find support for our decision elsewhere; however, we think the language of the amendment itself is a sufficient basis for the result we reach.

The language employed in the amendment to Section 8 is a clear indication of the people's intent to empower the legislature to interrupt judicial terms of office with an age limit on active service. The amendment states: "The General Assembly shall also prescribe the maximum age limits *for service* as a Justice or Judge." (Emphasis added.) The word, "service," in its ordinary meaning, refers to "the performance of work commanded or paid for by another." Webster's Third New International Dictionary 2075 (1971). The word, "service," thus relates to acts personal to a given individual. Thus the words, "for service," as used in the amendment to Article IV, Section 8 refer exclusively to the time during which an individual justice or judge is eligible to *serve* notwithstanding the length of his or her term of office. The words, "for service," as used in Article IV, Section 8, therefore, evince an intent to empower the legislature to render particular justices or judges ineligible for active service because of age notwithstanding that time may remain in their terms of office.

We find further evidence of the people's intent in ratifying the amendment to Article IV, Section 8, in the General Assembly's enactment of N.C.G.S. § 7A-4.20, conditioned upon the people's approval of the constitutional amendment. The legislature is em-

MARTIN v. STATE OF NORTH CAROLINA

[330 N.C. 412 (1991)]

powered to draft and enact a statute prior to, and conditioned upon, the adoption of a constitutional provision. *In re Martin*, 295 N.C. 291, 300, 245 S.E.2d 766, 771 (1978). *In re Martin* dealt with an amendment to Article IV, Section 17(2), which was ratified by the people at the same time, and in conjunction with, the amendment at issue today. The amendment to Section 17(2) conferred authority on the legislature to provide a procedure, in addition to impeachment, for the removal of justices and judges. Prior to, and conditioned upon, ratification of the amendment, the General Assembly had enacted N.C.G.S. § 7A-376 which conferred upon the Supreme Court original jurisdiction to censure or remove justices or judges.

In upholding the constitutionality of N.C.G.S. § 7A-376, we stated:

> [t]he people of this State ratified the proposed amendment to Article IV with knowledge that ratification would make effective legislation . . . not elsewhere constitutionally authorized. Further, since this legislation is not inconsistent with the express language of Article IV, Section 17(2), and does not in any way enlarge or diminish the powers granted to this Court . . . by Article IV, Section 12, *we are of the opinion that ratification of the amendment carried with it an expression of the will of the people that the Constitution be amended so as to empower the Legislature* to confer upon this Court original jurisdiction over the censure and removal of judges.

*Id.* at 300, 245 S.E.2d at 771-72 (emphasis added).

As in *In Re Martin*, the people ratified the amendment to Article IV, Section 8 with knowledge that N.C.G.S. § 7A-4.20 would take effect upon their doing so. Their ratification of the constitutional amendment with such knowledge is strongly indicative of the people's intent to empower the legislature to enact this statute notwithstanding the limitations which otherwise would have been imposed on the legislature by the eight-year term provision in Article IV, Section 16.

III.

[2] Judge Phillips' second and third arguments are based on claims involving infringements to what he considers fundamental rights guaranteed under Article I, Section 19 of our state Constitution,

**MARTIN v. STATE OF NORTH CAROLINA**

[330 N.C. 412 (1991)]

which states in part: "No person shall be deprived of the equal protection of the laws . . . ."

First, Judge Phillips contends that N.C.G.S. § 7A-4.20 violates his and his supporters' "equal right to vote," which the equal protection provision guarantees, *White v. Pate*, 308 N.C. 759, 304 S.E.2d 199 (1983), by effectively diluting their voting strength as compared to the voting strength of those voting for his opponent. He argues that, because of his age and its resulting impact on his term in office, he and his voters had less than one-tenth the voting impact of his opponent's supporters in the November 1990 General Election. He relies on this Court's statement in *White* that " 'a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction.' " *Id.* at 768, 304 S.E.2d at 205 (quoting *Dunn v. Blumstein*, 405 U.S. 330, 336, 31 L. Ed. 2d 274, 280 (1972) ). In *White*, we held that "Article I, § 19 of the Constitution guarantees the 'equal right to vote' guaranteed by the Constitution of the United States." *Id.* at 769, 304 S.E.2d at 205.

Judge Phillips next contends that the age limit for judicial service found in N.C.G.S. § 7A-4.20 unconstitutionally infringes upon what he asserts should be a fundamental right to candidacy for public office. Judge Phillips would have us adopt the position taken by the Supreme Court of the State of Washington in *Sorenson v. City of Bellingham*, 80 Wash. 2d 547, 496 P.2d 512 (1972). In *Sorenson* the Washington Supreme Court recognized a fundamental right to candidacy under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[2] Judge Phillips, acknowledging that the United States Supreme Court is unlikely to uphold the *Sorenson* court's position on this new fundamental right, urges, nevertheless, that we adopt it under Article I, Section 19.

The answer to these arguments, of course, is that N.C.G.S. § 7A-4.20 was, as we have demonstrated, not only authorized but

---

2. This is a position which has been urged by many legal commentators. See Michael A. Bragg, Note, *Adams v. Askew: The Right to Vote and the Right to Be a Candidate—Analogous or Incongruous Rights?*, 33 Wash. & Lee L. Rev. 243 (1976); Dennis W. Arrow, *The Dimensions of Newly Emergent Quasi-Fundamental Rights to Political Candidacy*, 6 Okla. City U. L. Rev. 1 (1981); Sarah A. Biety, Note, *Ballot-Access Restrictions and the First Amendment Status of the Right to Candidacy: Anderson v. Celebrezze*, 17 Creighton L. Rev. 187 (1983).

mandated by the people when they ratified the 1972 amendment to Article IV, Section 8 of our Constitution. One provision of the constitution cannot be in violation of another. It follows, therefore, that the statute did not violate other more general, substantive provisions of the very constitution which, in another provision, expressly and specifically mandated its enactment.

For the foregoing reasons, we hold that N.C.G.S. § 7A-4.20 is a valid and constitutional exercise of legislative authority.

The decision of the superior court is, therefore,

Affirmed.

Justice MARTIN did not participate in the consideration or decision of this case.